UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHIALA MARVICI and YASMINE FADIL,

Plaintiffs,

-v-

ROCHE FACILITIES MAINTENANCE LLC, LAURA
AMORUSO, and STEPHEN ROCHE,

Defendants.

21 Civ. 4259 (PAE) (JLC)

OPINION AND ORDER

PAUL A. ENGELMAYER, District Judge:

Plaintiffs Chiala Marvici ("Marvici") and Yasmine Fadil ask the Court to authorize

service of their summons and complaint on defendant Stephen Roche ("Roche") through non-

traditional means. For the reasons that follow, the Court holds that plaintiffs have shown that

traditional service on Roche is impracticable and that their proposed alternative methods,

undertaken in combination, would comport with the requirements of due process, and therefore

grants the motion.

## I.    Background

Plaintiffs have sued Roche Facilities Maintenance LLC ("RFM"), Roche (RFM's Chief

Executive Officer), and Laura Amoruso ("Amoruso"—RFM's Chief Financial Officer), alleging

violations of the Fair Labor Standards Act, 29 U.S.C § 201 *et seq.*, and New York Labor Law §

190, during their employment with RFM. Dkt. 1. The merits of those claims are irrelevant here.

On March 23, 2021, plaintiffs sent a demand letter regarding the legal and factual basis

for this lawsuit, via email, to Amoruso and Roche, and by regular mail to RFM's operating

address, 325 Hudson St., 4th Floor, Office No. 6, New York, New York, 11013. The emails

were not returned as undeliverable. On May 12, 2021, plaintiffs filed their complaint in this

Court. Dkt. 1. On May 17, 2021, plaintiffs served RFM. Dkt. 6. On June 9, 2021, according to plaintiffs, Amoruso sent Marvici a text message reading, "Ah Stephen [Roche] just got a letter from your lawyer…All bets are off – our lawyer will go through yours[.] What timing." *See* Dkt. 17 at 1. On June 23, 2021, plaintiffs served Amoruso. Dkt. 7.

Plaintiffs, however, failed to serve Roche by the deadline to do so under Federal Rule of Civil Procedure 4(m), August 10, 2021. By then, neither RFM nor Amoruso had responded to the complaint or otherwise appeared in the action—but plaintiffs had not obtained a certificate of default from the Clerk of Court or filed a motion for default judgment against either RFM or Amoruso. Accordingly, on August 17, 2021, the Court issued an Order to Show Cause requiring plaintiffs to explain why the case should not be dismissed against RFM or Amoruso for failure to prosecute, and why Roche had not been served. Dkt. 8. On August 18, 2021, plaintiffs requested and received clerk's certificates of default as to RFM and Amoruso. Dkts. 15–16.

On September 13, 2021, plaintiffs filed a letter with the Court explaining their unsuccessful efforts to serve Roche. Dkt. 17. Roche's current address is unknown, plaintiffs explained, and they had been unable to find any public information on his whereabouts. *Id.* On May 25, 2021, plaintiffs stated, they had attempted to serve Roche at his last known residential address, 581 Ashford Ave., Ardsley, New York, 10502, but the current resident advised plaintiffs' process server that Roche no longer lived there. *Id.* On July 4, 2021, plaintiffs conducted a database search of Roche's driver's license, but the search came up empty because Roche's driver's license had been suspended. *Id.* Plaintiffs were also unable to contact Roche through his company, RFM, because it had ceased operations at its 325 Hudson address, its website had been taken down, and the phone number listed on its Facebook page (which has not been updated since January 4, 2021) was nonoperational. On September 13, 2021, plaintiffs

asked the Court for permission to serve Roche via email to the email address Roche used to communicate with plaintiffs during their employment. *Id.* On September 15, 2021, the Court granted that request. Dkt. 18. On September 29, 2021, plaintiffs filed another letter with the Court, this time explaining that its attempt to serve Roche via email was unsuccessful, as the email bounced back as undeliverable. Dkt. 20.

Their attempts to serve Roche heretofore unsuccessful, plaintiffs now request, *inter alia*, the Court's permission to serve Roche via (1) certified mail to his last known residence (the 581 Ashford address) and to the former RFM office (the 325 Hudson address); and (2) text message to the phone number Roche used to communicate with Marvici during their employment, (914) 306-0371. Plaintiffs argue that, for several reasons, these methods will together reasonably apprise Roche of this lawsuit. As to the mode of mailing, the New York Secretary of State's website identifies RFM as an "active" company and lists RFM's "Service of Process" address as the 581 Ashford address. Plaintiffs argue that, given Roche's need to receive mail regarding his business and former home, it is reasonable to infer that he uses a mail-forwarding service to allow mail to reach him at his current, unknown, address. *Id.* As to the mode of text messaging, plaintiffs describe the number as Roche's personal cell phone number, which Roche used to communicate with Marvici. Plaintiffs do not have reason to believe the number has been disconnected or reassigned.

## II.    Applicable Legal Standard

Federal Rule of Civil Procedure 4(e) provides, *inter alia*, that an individual may be served pursuant to the procedures allowed by state law in the state in which the district court is located. Fed. R. Civ. P. 4(e)(1). New York state law, which applies here, provides a number of approved methods of service. It further provides that service may be effectuated "in such

manner as the court, upon motion without notice, directs, if service is impracticable" under the other specified methods of service.  N.Y. C.P.L.R. § 308(5).  "Section 308(5) requires a showing of impracticability, under the facts and circumstances of the case, but does not require proof of due diligence or of actual prior attempts to serve a party under the other provisions of the statute." *Shamoun v. Mushlin*, No. 12 Civ. 3541 (AJN), 2013 WL 91705, at *2 (S.D.N.Y. Jan. 8, 2013) (citing *Fortunato v. Chase Bank USA, N.A.*, No. 11 Civ. 6608 (JFK), 2012 WL 2086950, at *3–4 (S.D.N.Y. June 7, 2012)).

Plaintiffs have amply shown the impracticability of traditional service, as they have shown that actual prior attempts to serve Roche, performed with due diligence, have been unsuccessful.  On June 18, 2021, plaintiffs attempted to serve Roche in person at the 581 Ashford address, where Roche once lived, and which was then—as it is now—the "Service of Process" address registered with the New York Secretary of State for RFM.[1]  When plaintiffs' process server visited the address, he was informed by the occupant that Roche "no longer lives [t]here."  Dkt. 17-1.  Plaintiffs attempted to discover Roche's new address by searching publicly available databases, but they have been unable to find anything.  On July 4, 2021, for instance, plaintiffs conducted a database search of Roche's driver's license, but it had been suspended, making the search unhelpful. *See* Dkt. 17-2.

Plaintiffs are unable to contact Roche through his company, either.  RFM's website has been taken down, the number on its Facebook page is nonoperational, and the Facebook page has not been updated for nearly a year.  Moreover, plaintiffs assert that RFM has ceased operating at

---

[1] *See* Dkt. 17-1; N.Y. Dep't of State, Div. of Corps., Entity Information, https://apps.dos.ny.gov/publicInquiry/EntityDisplay (search terms: "Roche Facilities Maintenance LLC") (accessed October 4, 2021).

its 325 Hudson address, where they had previously worked for RFM. Dkt. 17 at 2. Accordingly, plaintiffs lack any real means of getting a message through to Roche via RFM.

Finally, plaintiffs' attempt to serve Roche via email—already a foray into non-traditional methods of service—has failed. Pursuant to the Court's order, plaintiffs emailed steve@roche.team, the email address Roche used to communicate with plaintiffs during their employment with RFM. Before plaintiffs filed their complaint, that email address appeared to be in working order—plaintiffs emailed a demand letter to the address, and they did not receive a bounce back notification. But by the time plaintiffs attempted to serve Roche via that email address, it had been deactivated or otherwise rendered unusable. Plaintiffs' email immediately bounced back as undeliverable. Dkt. 20 at 1.

Given plaintiffs' "demonstrated inability to effectuate service through traditional means, the Court concludes that service pursuant to the particular methods specified by New York State law is impracticable and that alternative service is appropriate." *Shamoun*, 2013 WL 91705, at *2 (citing *Fortunato*, 2012 WL 2086950, at *5–6).

### III.    The Alternative Means of Service Satisfies Due Process

"Constitutional notions of due process require that any means of service be 'reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *SEC v. Antisevic*, No. 05 Civ. 6991 (KMW), 2009 WL 361739, at *4 (S.D.N.Y. Feb. 13, 2009) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). Here, service by certified mail to Roche's and his company's last known addresses and text messages to Roche's personal cell phone number are reasonably calculated to provide Roche with notice of future filings in this case.

In general, courts have authorized alternative service via certified mail to a last known address. *See, e.g.*, *Ferrarese v. Shaw*, 164 F. Supp. 3d 361, 366 (S.D.N.Y. 2016) (citing *D.R.I., Inc. v. Dennis*, No. 03 Civ. 10026 (PKL), 2004 WL 1237511, at *1 (S.D.N.Y. June 3, 2004) (collecting cases)) ("Courts have found that service by certified mail to a defendant's last known address is a valid method of alternate service."). The problem here, of course, is that plaintiffs *know* that Roche does not actually live or work at the addresses to which, respectively, they intend to send the certified mail. Plaintiffs posit that it is reasonable to infer that Roche has set up mail forwarding services from those addresses to his current, unknown address. In support, plaintiffs note that the New York Secretary of State still lists RFM as an "active" company with a "Service of Process" address as Roche's previous home address, and posit that Roche likely still needs to receive mail regarding his company and home. The Court agrees that plaintiffs' position is reasonable. The Court, however, would hesitate to rely entirely on such reasoning—plausible though it may be—in holding that the certified mailings alone would satisfy due process.

But plaintiffs' proposal must be measured as a whole. Here, plaintiffs intend to supplement the mailings with service via text message to Roche's personal cell phone number. There are good reasons to believe that doing so would actually apprise Roche of the pending lawsuit. In particular, Marvici communicated with Roche at the cell phone number in question. And there is no reason to believe that he no longer uses that number. Indeed, personal cell phone numbers, generally speaking, are uniquely tethered to their holders, and tend to be durable, such that there is little risk that some other user now uses Roche's phone number. *See* Claire M. Specht, *Text Message Service of Process—No LOL Matter: Does Text Message Service of Process Comport with Due Process?*, 53 B.C. L. Rev. 1929, 1954 & n.207 (2012) (discussing

how service via text message directly targets a defendant and comports with due process).

Further, as a practical matter, text messaging has become a prolific means of communication in today's day and age. It is reasonable to assume that Roche continues to monitor the text messages sent to his phone.

To be sure, if the plaintiffs were proposing to serve Roche *only* by means of a text message, as opposed to using text messaging as a supplemental means of service, a substantial question would arise whether that service comports with due process. But plaintiffs' proposed approach does not suffer from that defect, because the text message will serve as but one piece of a multi-prong approach to service. This Court and others have approved multi-prong approaches to service before, in contexts that at the time arguably appeared more novel than this, and other courts have approved of multi-prong approaches to service that included text messaging. *See, e.g., F.T.C. v. PCCare247 Inc.*, No. 12 Civ. 7189 (PAE), 2013 WL 841037, at *5–6 (S.D.N.Y. Mar. 7, 2013) (approving service via combination of email and Facebook, in 2013); *Baidoo v. Blood-Dzraku*, 5 N.Y.S.3d 709, 716 (Sup. Ct. 2015) (permitting service via Facebook and directing plaintiff to advise defendant via phone call and text message of such service); *Ross v. Dejarnetti*, No. 18 Civ. 11277 (NJB), 2019 WL 8301676, at *6 (E.D. La. Aug. 23, 2019) (permitting service by text message, email, and through defendant's business website).

The Court acknowledges that service by text message is a relatively new concept, and it is conceivable that Roche will not in fact receive notice by this means. But, as noted, the governing standard is not whether service is a certainty, but whether the means of service, all in, are reasonably calculated to reach the party in question.[2] Here, the proposed service by text

---

[2] "Strange as it may sound, the validity of a particular form of service is not necessarily dependent on the likelihood of receipt." *Snyder v. Alternate Energy, Inc.*, 857 N.Y.S.2d 442, 448 (Sup. Ct. 2008). New York law "has long been comfortable with many situations in which it is

message is intended as one component of a suite of service methods, backstopping the plan also to serve Roche by certified mail both at his last known residential address (where his company is still registered) and at his company's previous operating address.

History teaches that, as technology advances and modes of communication progress, courts must be open to considering requests to authorize service via technological means of then-recent vintage, rather than dismissing them out of hand as novel. *See, e.g.*, *New England Merch. Nat'l Bank v. Iran Power Generation & Transmission Co.*, 495 F. Supp. 2d 73, 81 (S.D.N.Y. 1980) (authorizing service by Telex, and noting that courts "cannot be blind to changes and advances in technology. No longer do we live in a world where communications are conducted solely by mail carried by fast sailing clipper or steam ships"); *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1017 (9th Cir. 2002) (authorizing service by email, while "acknowledg[ing] that we tread upon untrodden ground"). As the Ninth Circuit has aptly noted, the due process reasonableness inquiry "unshackles the federal courts from anachronistic methods of service and permits them entry into the technological renaissance." *Rio Props.*, 284 F.3d at 1017. Particularly where the party to be served has "zealously embraced" a comparatively new means of communication, it comports with due process to serve him or her by those means. *Id.* at 1018 (recognizing limitations of service of process by new means but leaving it to the district court's discretion "to balance the limitations of email service against its benefits in any particular case"). And as noted, in recent years, a growing number of courts have

---

evident, as a practical matter, that parties to whom notice was ostensibly addressed would never in fact receive it." *Dobkin v. Chapman*, 236 N.E.2d 451, 458 (N.Y. 1968). For instance, alternative service via publication in newspapers "is almost certain not to provide actual notice to a defendant [but] turns out to be one of the most frequently used." *Snyder*, 857 N.Y.S.2d at 448.

authorized text messaging as a component of a multi-prong service plan. *See, e.g.*, *Baidoo*, 5 N.Y.S.3d at 716; *Ross*, 2019 WL 8301676, at *6.

Service by alternative means is all the more reasonable where a defendant demonstrably already has knowledge of the lawsuit. *See SEC v. Tome*, 833 F.2d 1086, 1093 (2d Cir. 1987); *WhosHere, Inc. v. Orun*, No. 13 Civ. 526 (AJT) (TRJ), 2014 WL 670817, at *4 (E.D. Va. Feb. 20, 2014) (citing *BP Prods. N.A., Inc. v. Dagra*, 236 F.R.D. 270, 272 (E.D. Va. 2006)) ("In tailoring alternative methods of process pursuant to Rule 4(f)(3), courts have taken into consideration whether defendant already possessed either knowledge of suit or that he may be the subject to a suit."). Such appears to be the case here. *See* Dkt. 17 at 1 (describing message from Amoruso to Marvici stating, "Ah Stephen [Roche] just got a letter from your lawyer…All bets are off – our lawyer will go through yours"). Amoruso's message to Marvici all but demonstrates that Roche is on actual notice of this lawsuit. That fact, together with the likelihood that Roche will be reached (directly or by the forwarding of mail to him) by certified mail sent to both his last known personal address (where his company remains registered) and his company's previous operating address, and by text messages sent to Roche's personal mobile device, satisfies due process.

In light of the foregoing, plaintiffs are granted permission to serve Roche by having a process server (1) send, via certified mail, the summons and complaint to 581 Ashford Ave., Ardsley, New York, 10502, and 325 Hudson St., 4th Floor, Office No. 6, New York, New York, 11013; and (2) send an SMS/text message to (914) 306-0371, advising Roche of the pendency of this action and including links to PDF files of the summons, complaint, and this order. The process server is to identify herself as such in the transmittal, and include contact information for plaintiffs' attorneys. The text message is to be followed up with a phone call to the same number

to confirm receipt of the message.  This process shall be repeated once a week for three consecutive weeks or until acknowledged by Roche.

Plaintiffs are further granted an extension of time to serve process of Roche, there being good cause for such given the discussion above.  *See* Fed. R. Civ. P. 4(m).  Plaintiffs shall serve Roche via the process described above no later than October 25, 2021.  Following each attempt at service, plaintiffs shall file an affidavit attesting to such service on the docket of this case.  The deadline by which plaintiffs shall submit motions for default judgment, to the extent a defendant has not appeared and/or filed a responsive pleading, is extended to November 22, 2021.

SO ORDERED.

Paul A. Engelmayer

PAUL A. ENGELMAYER
United States District Judge

Dated: October 6, 2021
       New York, New York